UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMIE E. STRASSER,

    Plaintiff,

v.                                            Case No. 21-C-1257

FARZANEH MASOOL TONDKAR, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Jamie Strasser, a prisoner at Oshkosh Correctional Institution who is representing himself, is proceeding on Eighth Amendment claims against Defendants Farzaneh Masool Tondkar, Daniel LaVoie, and Hannah Utter in connection with the cancellation of his pain medication. On March 9, 2023, Dr. LaVoie and Utter filed a motion for summary judgment. That same day, Dr. Tondkar filed her own motion for summary judgment. For the reasons explained in this decision, the Court will grant the Defendants' motions and will dismiss this action.

## BACKGROUND

At the relevant time, Strasser was an inmate confined at Green Bay Correctional Institution (GBCI), where Utter worked as the health services manager. Dr. Tondkar was contracted to work at GBCI from May 15, 2021, until August 15, 2021; she reported to Dr. LaVoie, the Medical Director of the Division of Adult Institutions, Bureau of Health Services. Strasser has a complicated medical history that includes the abuse of drugs, including cocaine, heroin, and opioids. Among other conditions, Strasser suffers from chronic, severe lower back pain as a result of a displaced disc that has contact with a nerve root, and he has been diagnosed with deep vein

thrombosis (DVT) in his right leg, for which he takes blood thinners. Dkt. No. 56 at ¶¶1-3, 36–39; Dkt. No. 61 at ¶¶4–5; Dkt. No. 88 at ¶1.

In December 2019, while incarcerated at Fox Lake Correctional Institution, Strasser was admitted to the hospital for DVT treatment. After he returned to the institution, he was transferred to the Wisconsin Resource Center, which is a state facility managed by the Wisconsin Department of Health Services that provides specialized mental health services to Wisconsin inmates. At the time, Strasser was taking Gabapentin, which is sometimes prescribed to treat nerve pain. On February 21, 2020, Strasser requested that he be switched from Gabapentin to Lyrica, which he had taken before. Strasser's doctor prescribed Lyrica 150mg twice per day. A few weeks later, he increased the dosage to 150mg three times per day. On June 25, 2020, the doctor increased the prescription to 150mg in the morning and afternoon and 300mg at bedtime. Strasser asserts that following this final increase he had very few complaints about his pain. Dkt. No. 56 at ¶¶29, 39–48; Dkt. No. 88 at ¶¶3, 6; Dkt. No. 58-1 at 27.

About a year later, on June 24, 2021, Strasser was transferred from the Wisconsin Resource Center to GBCI. When an inmate transfers from a non-DOC facility to a DOC facility, he continues to take his prescribed medications for thirty days. Fourteen days before the prescription is set to run out, the advance care provider receives a reminder, which prompts the provider to review the inmate's medications and, if necessary, submit requests through the designated approval process. On July 8, 2021, Dr. Tondkar submitted a request to Dr. LaVoie that she be permitted to continue Strasser's prescription for Lyrica. A request was necessary because Lyrica is a non-formulary drug, meaning she could prescribe it only with approval from Dr. LaVoie. Dr. LaVoie explains that in response to inmate misuse of Gabapentin and Lyrica, the DOC created a special form for their approval. Gabapentin is problematic in the correctional setting because it has the potential for abuse and diversion; inmates snort it to get a high similar to valium. Lyrica,

on the other hand, has a lower risk of misuse because it needs to be metabolized through the liver for the patient to receive therapeutic results. Accordingly, it is more difficult, but still possible, for inmates to misuse Lyrica to get a high. Dkt. No. 56 at ¶¶29-32, 50-53; Dkt. No. 61 at ¶¶16-21.

Dr. LaVoie denied Dr. Tondkar's request on July 14, 2021, because she did not provide a clinical justification for the request. Dr. LaVoie explains that requests for non-formulary drugs must include the inmate's medical history, what formulary medications have been tried, and any diversion history. He asserts that, if any of that information is missing, the request will be denied. If a request is denied on that basis, a provider may resubmit the request and provide the missing information. Dr. Tondkar did not resubmit the request. Instead, the day after the denial, Dr. Tondkar cancelled Strasser's Lyrica prescription. On July 16, 2021, Strasser requested several special needs items, including compression socks and a TENS unit and pillow for his back. That day, Dr. Tondkar entered an order for Strasser to meet with pain services, and on July 23, 2021, she ordered an extra pillow and compression socks for Strasser. On August 2, 2021, Dr. Tondkar ordered a TENS unit for Strasser. Dr. Tondkar's employment at GBCI ended a week later, on August 10, 2021. Dkt. No. 56 at ¶¶53–57, 60–63; Dkt. No. 61 at ¶¶23, 28–29, 37, 41.

On July 29, 2021, after learning that Dr. LaVoie had denied Dr. Tondkar's request for Lyrica, Strasser submitted a medical request asking if he could be put back on Gabapentin if Lyrica was not available. A nurse responded that he had appointments scheduled with his provider and pain services. Less than a week later, on August 3, 2021, Strasser submitted a medical request to Dr. LaVoie noting that he wanted to go back to Gabapentin since Dr. LaVoie had denied the request for Lyrica. Strasser requested that Dr. LaVoie deny his Gabapentin request in writing so he could pursue an inmate complaint. That day, a nurse responded and referred Strasser to Utter, the health services manager. Utter responded about a week later instructing Strasser to submit a

disbursement request to pay for copies of his medical records. Dkt. No. 56 at ¶¶64–65; Dkt. No. 61 at ¶¶34–39.

After Dr. Tondkar's employment at GBCI ended, Strasser's care was transferred to Advanced Practice Nurse Prescriber Lori Wachholz, who is not a Defendant. In September 2021, after Strasser was sent to the emergency room for complaints of severe leg pain, Wachholz ordered a lower bunk/tier restriction. She also placed an order for 1000mg of Tylenol. Shortly thereafter, following complaints from Strasser about his pain, she placed an order for biofreeze and allowed him to use a wheelchair for a month; she also placed an order for a consult with pain services. Dkt. No. 56 at ¶95, 105–112.

On October 27, 2021, Strasser submitted a health services request that was addressed to Utter stating that he was "miserably in pain and can't function and nothing has been done." That same day, Utter responded to Strasser, informing him that he had orders for physical therapy, a TENS unit, Tylenol, biofreeze, and pain services and provider follow-ups scheduled. She directed him to let health services know if he would like to see a nurse. Strasser initiated this case two days later, on October 29, 2021.[1] Dkt. No. 56 at ¶¶66-67; Dkt. No. 1.

---

[1] The parties describe the treatment Strasser received after he filed his complaint through March 2023, but "[n]ormally, a complaint can seek relief only for events that have already occurred." *Chicago Regional Council of Carpenters v. Village of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). If a plaintiff wants his complaint broadened to encompass events that happened after he filed his complaint, he must move to supplement the complaint. Under Fed. R. Civ. P. 15(d), "[o]n motion and reasonable notice, the court may on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Strasser never moved to supplement his amended complaint, so if he believes treatment decisions that occurred after he filed his complaint violated his constitutional rights, he must raise those claims in a new lawsuit. The Court acknowledges that Strasser filed a proposed amended complaint on February 24, 2022, but the Court struck the proposed amended complaint because Strasser did not comply with Civil L. R. 15 and because the factual allegations were largely duplicative of the allegations in the original complaint. *See* Dkt. No. 19.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Strasser asserts that Dr. Tondkar and Dr. LaVoie violated the Eighth Amendment because they were deliberately indifferent to his severe back pain when they cancelled his long-standing prescription for Lyrica. He also asserts that Utter was deliberately indifferent to his pain when she failed to address his complaints about the cancellation of his pain medication. The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). Defendants do not dispute that Strasser's

chronic pain constitutes an objectively serious medical condition, so the Court's analysis will focus on whether a jury could reasonably conclude that each Defendant was deliberately indifferent to that condition.

**1. No Jury Could Reasonably Conclude that Dr. Tondkar Was Deliberately Indifferent to Strasser's Chronic Pain.**

Strasser explains that his pain had been managed for about a year when he transferred to GBCI. Dr. Tondkar requested that Strasser's prescription for Lyrica be refilled, but Dr. LaVoie denied the request because it did not contain all the necessary information. Dr. Tondkar did not supplement her request with the required information; instead, she cancelled Strasser's prescription, and, in the following days, placed orders for compression socks, a TENS unit, and a pillow for his back. Dr. Tondkar also entered an order for Strasser to meet with pain services to explore other ways to address Strasser's pain. No jury could reasonably conclude that Dr. Tondkar's actions demonstrate deliberate indifference to his complaints of pain. Although Strasser would have preferred Lyrica, mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Further, an inmate is not entitled to demand specific care or the best care possible; he is entitled only to reasonable measures. *Id.* Dr. Tondkar did not provide Strasser with the specific care he desired, but she pursued multiple other options to relieve his pain. That is all the Constitution requires.

Further, it bears noting that Dr. LaVoie states in his declaration that, had Dr. Tondkar submitted a complete request in 2021 that included Strasser's medical history, EMG and MRI results, diversion history, and past medications, he would not have approved the request. Dkt. No. 58 at ¶57. The Seventh Circuit has explained that a plaintiff must "establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or

6

damages." *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) (emphasis in the original). Therefore, Strasser's claim also fails because, even if Dr. Tondkar had supplemented the request form with the missing information, she would not have been authorized to prescribe Lyrica. Strasser therefore suffered no injury as a result of her decision not to resubmit the request form. Dr. Tondkar is entitled to summary judgment.

**2. No Jury Could Reasonably Conclude that Dr. LaVoie Was Deliberately Indifferent to Strasser's Chronic Pain.**

Dr. LaVoie's involvement in Strasser's care during the relevant time was limited to him denying Dr. Tondkar's incomplete request for Lyrica. Dr. LaVoie explains that, in response to the risk of misuse for Gabapentin and Lyrica, in 2018 Corrections created a special form for their approval. He states that he must evaluate an inmate's need for those drugs to protect the prison population from potential abuse and to protect the inmate from being extorted for their prescription. Dkt. No. 58 at ¶14. Dr. Tondkar does not dispute that she failed to provide Dr. LaVoie with the information required for him to evaluate her request. Nor does she dispute that she could have resubmitted her request with the required information. Dr. LaVoie, who serves as the medical director for all institutions, appropriately relied on the providers to support their requests with the required information, and he is not responsible for their failure to do so. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). Given Dr. LaVoie's concerns about the potential abuse of Lyrica, no jury could reasonably conclude that he was deliberately indifferent to Strasser's pain when he

denied Dr. Tondkar's request for Lyrica based on an incomplete request form. Dr. LaVoie is entitled to summary judgment.

3. **No Jury Could Reasonably Conclude that Utter Was Deliberately Indifferent to Strasser's Chronic Pain.**

As health services manager, Utter managed and supervised the health care services provided to inmates; developed institution-specific procedures; monitored care plans; prepared reports; and served as a liaison between the health services unit, other disciplines and units at the institution, and outside providers. Utter did *not* diagnose or prescribe medications for inmates. Medical care for inmates was provided by the health services unit staff and advance care providers. Utter explains that because she provided overall administrative support and direction for the health services unit, she was not aware of an inmate's plan of care unless it was specifically brought to her attention. Utter explains that she deferred to advance care providers regarding the appropriate medical interventions, and she did not have the authority to override or alter an advance care provider's decisions. Dkt. No. 56 at ¶¶5-11.

Utter received two health services requests from Strasser during the relevant time. The first was addressed to Dr. LaVoie but was routed to her to respond. Strasser asked Dr. LaVoie to deny his request for Gabapentin in writing so that he could pursue an inmate complaint. Utter informed Strasser that he could submit a disbursement request to pay for a copy of his medical records. The second, which was submitted just two days before he initiated this lawsuit, complained that he was in pain and nothing was being done. Utter responded the same day and reviewed all the interventions that had been ordered by his advanced care provider, including physical therapy, a TENS unit, Tylenol, and biofreeze. She also confirmed that he had upcoming appointments with pain services and his advanced care provider.

8

As the Seventh Circuit has explained, a prison official generally does not act with deliberate indifference if she reasonably relies on the judgment of medical personnel. *Eagen v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021). Given Utter's administrative role, she was "entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care." *Id*. (citations omitted). Strasser offers no evidence from which a jury could reasonably conclude that Utter had reason to know that his providers were failing to treat or inadequately treating him. Given that Utter did not ignore Strasser's complaints, but instead reviewed his records and responded to his concerns, no jury could reasonably conclude she acted with deliberate indifference. Utter is therefore entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Dr. Tondkar's motion to restrict documents in support of her motion for summary judgment (Dkt. No. 52) is **GRANTED**, and her motion for summary judgment (Dkt. No. 59) is **GRANTED**.

**IT IS FURTHER ORDERED** that Dr. LaVoie and Utter's motion for relief from Civil L. R. 56(b)(1)(C)(ii) (Dkt. No. 92) is **GRANTED**, and their motion for summary judgment (Dkt. No. 54) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The clerk of court shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 27th day of November, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.